**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Civil Action No. 1:20-cv-1198 |
| Plaintiff, ) | |
| ) | |
| v. ) | **JOINT MOTION FOR** |
| ) | **CONSENT JUDGMENT** |
| RAMZAN BHIMANI, ) | |
| a/k/a Ramzan Hussain, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff the United States of America ("United States") and Defendant Ramzan Bhimani, a/k/a Ramzan Hussain ("Defendant"), through undersigned counsel, jointly move the Court to enter the attached proposed Consent Judgment Revoking Naturalization. This motion is supported by Defendant's admission to, and acknowledgment of the truth of, the facts identified below.

**FACTUAL BACKGROUND**

On or about November 20, 1978, Defendant presented himself for admission into the United States and was admitted the same day under the name "Ramzanali Ghulam Hussain" pursuant to a B-2 nonimmigrant visa, valid until November 30, 1978. Defendant thereafter remained in the United States past the date that his nonimmigrant visa expired. On November 6, 1979, Defendant, using the name "Ramzan Ali Ghulam-Hussain" and a birthdate in 1956, applied for asylum in the United States with the Immigration and Naturalization Service ("INS").[1] On December 14, 1979, the INS referred Defendant's case to the immigration court

---

[1] On March 1, 2003, the INS ceased to exist and many of its relevant functions transferred to the Department of Homeland Security (DHS) and its sub-agencies, including U.S. Citizenship and Immigration Services (USCIS). *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 110

1

and issued Defendant an Order to Show Cause and Notice of Hearing charging him with deportability under Section 241(a)(2) of the Immigration and Nationality Act ("INA"), as an alien who remained in the United States for a longer time than permitted after admission. He was ordered to appear before an immigration judge to show cause why he should not be deported.

Before his scheduled hearings in deportation proceedings, on December 12, 1981, Defendant married U.S. Citizen Lourie R. Carter in Cook County, Illinois. On February 18, 1982, the INS received a Form I-130, Petition to Classify Status of Alien Relative for Issuance of Immigrant Visa ("Form I-130"), submitted by Lourie Hussain ("Carter-Hussain") on behalf of "Ramzan Hussain." The INS approved the Form I-130 on July 11, 1983, and on August 12, 1983, Defendant submitted to the INS a Form I-485, Application for Status as Permanent Resident ("application for permanent residency" or "Form I-485"), predicated upon the approved Form I-130 filed by Carter-Hussain. In his Form I-485, which he signed as Ramzan Hussain on January 20, 1982, Defendant represented, *inter alia*, that: his name was Ramzan Hussain; he was born in 1956; he was married and had been married one time, including his present marriage; the name of his wife, including her maiden name, was Lourie Carter; and he resided with his wife at 6611 North Sheridan Road in Chicago. In support of his application, Defendant submitted a marriage license stating that "Ramzan Hussain" and "Lourie R. Carter" were married on December 19, 1981, in Chicago; a September 7, 1983 letter from First National Bank of Chicago stating that "Ramzan A. Hussain" had a joint savings account with his wife, Lourie Hussain; a lease dated September 1, 1983, and signed by Ramzan Hussain, providing that Ramzan Hussain

---

Stat. 2135 (Nov. 25, 2002). Because all of the events at issue here occurred prior to the transfer, INS will be referenced.

and Lourie Hussain would lease apartment 501 at 6611 North Sheridan Road in Chicago, for a term of September 1, 1983, to September 30, 1984; and a 1982 Internal Revenue Service ("IRS") Form 1040 filed jointly by "Ramzan A. and Lourie Hussain."

In light of Defendant's pending application for permanent residency, on August 18, 1983, the INS filed a motion to terminate Defendant's pending deportation proceedings with the immigration court. The same day, an immigration judge granted INS's motion and terminated Defendant's deportation proceedings for the limited and sole purpose of permitting his application for permanent residency to be considered by INS. The immigration judge ordered that if action taken by the INS was favorable to Defendant, his pending deportation proceedings would be terminated, but if unfavorable, the proceedings would remain in full force and effect.

On September 14, 1983, Defendant and his spouse, Carter-Hussain, appeared before an INS officer for an interview regarding Defendant's application for permanent residency. During the interview, the INS officer took sworn statements from each regarding the bona fides of their marriage and Defendant's written responses on his Form I-485. At the conclusion of the interview, Defendant swore that he knew the contents of the application subscribed by him, including the attached documents, and that the same were true to the best of his knowledge. Defendant again signed the Form I-485 in the presence of the INS officer, swearing that he had signed the application with his "full, true name," and that "Ramzan Hussain" was his "Complete and true signature."

On or about March 12, 1984, the INS notified Defendant that he and Carter-Hussain were scheduled to appear for a follow-up interview on Defendant's application for permanent residency on March 26, 1984. Defendant failed to appear for the March 26, 1984 interview, however, Carter-Hussain, along with Defendant's attorney, appeared and requested a

3

rescheduled interview, which was set for April 9, 1984. During the March 26, 1984 interview, Carter-Hussain stated that she and Defendant were still living together at the 6611 North Sheridan Road, Chicago address provided on the Form I-130 and Form I-485 and for which a lease was submitted with the Form I-485 providing a term of September 1, 1983, to September 30, 1984. Neither Defendant nor Carter-Hussain appeared at the rescheduled April 9, 1984 interview on Defendant's application for permanent residency. On April 9, 1984, INS issued Defendant a final notice, again rescheduling the interview for April 23, 1984. After Defendant and Carter-Hussain failed to appear for the April 23, 1984 interview, the INS denied Defendant's application for permanent residency on July 10, 1984, due to lack of prosecution. The INS notified Defendant that if he elected to not file a new application for permanent residency, he must depart the United States before July 20, 1984, or else proceedings to enforce his departure may result. Defendant did not depart the United States as required.

During the time period when Defendant was applying for permanent residency as the spouse of Carter-Hussain, Defendant, using the name "Ramzan Bhimani," purported to marry U.S. citizen Nina M. Wilson in Cook County, Illinois, on May 17, 1983. On June 1, 1983, the INS received a Form I-130 filed by Nina M. Bhimani ("Wilson-Bhimani") on behalf of Defendant, in which Wilson-Bhimani represented herself as the wife of Defendant, "Ramzan G. Bhimani," who she stated she married on May 17, 1983, in Chicago. Wilson-Bhimani further stated in the Form I-130 that Defendant had "0" prior spouses; that the last address at which she and Defendant resided together was their then-present address in Chicago, where they had resided since May 1983; and that Defendant had last arrived in the United States as an undocumented alien on January 1, 1982. On September 10, 1983, INS approved the Form I-130 filed by Wilson-Bhimani without an interview.

4

Thereafter, on March 1, 1984, Defendant appeared at the U.S. Consulate in Toronto, Canada, and submitted a U.S. Department of State Optional Form 230, Application for Immigrant Visa and Alien Registration ("visa application"). In his visa application, Defendant stated, *inter alia*, that: his name was Ramzan G. Bhimani; he had neither used nor was known by other names; he was born in 1954; he was married and, including his present marriage, he had been married one time; his wife's name was Nina Marie Wilson, who he married on May 17, 1983, in Chicago; his purpose for going to the United States was "for spouse" and he intended to stay permanently; he had resided at his then-present address at 6758 Sheridan Road in Chicago—the same address Wilson-Bhimani listed in the Form I-130 filed on Defendant's behalf—since May 1983, at 6830 Sheridan Road in Chicago from January 1982 to May 1983, and at two addresses in Pakistan from birth until January 1982; and he had never applied for an immigrant or nonimmigrant visa to enter the United States.

On March 1, 1984, a consular officer interviewed Defendant about his visa application, and at the conclusion of the interview, Defendant signed the application as "Ramzan Bhimani" in the presence of a consular officer, swearing that all statements which appeared in the application were made by Defendant and were true and complete to the best of his knowledge and belief. In support of his visa application, Defendant submitted, *inter alia*, a marriage license and a marriage certificate purporting that Ramzan Bhimani and Nina M. Wilson were married on May 17, 1983, in Chicago; a February 28, 1984 letter from Niles Savings stating that "Ramzan Bhimani and Nina Bhimani has [sic] an account at our association;" and a 1983 Form 1040 U.S. Individual Income Tax Return for Ramzan Bhimani and Nina Bhimani.

On March 1, 1984, the U.S. Consulate in Toronto approved Defendant's visa application under the name Ramzan G. Bhimani. On March 2, 1984, Defendant applied for entry into the

United States at Detroit, Michigan, and was admitted as a lawful permanent resident under the classification IR1, as the spouse of a U.S. citizen. He was issued an Immigrant Visa and Alien Registration bearing his photograph, the name Ramzan Bhimani, and a date of birth in 1954, as temporary evidence of his lawful admission for permanent residence. On July 2, 1985, Defendant divorced Wilson-Bhimani.

     Defendant admits that he was still married to Carter-Hussain when he purported to marry Wilson-Bhimani on May 17, 1983, that he and Carter-Hussain were not divorced, and that Carter-Hussain was then living. In fact, as set forth above, Carter-Hussain appeared at Defendant's interview on his application for permanent residency on March 26, 1984—representing herself as Defendant's wife and claiming that the two lived together— nearly a year after Defendant purported to marry Wilson-Bhimani in May 1983, and three weeks after Defendant, using the Ramzan Bhimani identity, obtained an immigrant visa on March 1, 1984, based on his purported marriage to Wilson-Bhimani. Additionally, as noted above, Defendant and Carter-Hussain gave sworn statements to the INS regarding the bona fides of their marriage on September 14, 1983—including a description of their wedding, how they celebrated the holiday as a couple on July 4, 1983, the meal they shared the night prior, and how they paid rent for their shared apartment—nearly fourth months after Defendant, using the Ramzan Bhimani identity, purported to marry Wilson-Bhimani. And Defendant submitted his application for permanent residency as the spouse of Carter-Hussain approximately three months after he purported to marry Wilson-Bhimani.

     On December 21, 1988, Defendant filed a Form N-400, Application to File Petition for Naturalization ("Form N-400"), with the INS. He was interviewed under oath regarding his eligibility for naturalization on August 21, 1989. In both his Form N-400, signed under penalty

of perjury, and orally at his naturalization interview under oath, Defendant stated, *inter alia*, that his name was Ramzan Bhimani, he was born in 1954, he had never used any other names, his then-present marital status was divorced, and his only prior spouse was Nina Wilson, whom he divorced on July 2, 1985. Defendant admits that his responses on the Form N-400 and his testimony during the naturalization interview that he was not then married and that his only prior spouse was Nina Wilson were false.

Based upon the information supplied by Defendant in his Form N-400 and his testimony during the interview, the INS determined that Defendant was eligible to file a naturalization petition, and presented a recommendation and report to the naturalization court that Defendant's naturalization petition be granted. On August 21, 1989, Defendant completed a Form N-405, Petition for Naturalization ("Form N-405"), addressed to the Honorable Judges of the U.S. District Court for the District of New Jersey, stating, *inter alia*, that: his full, true and correct name was "Ramzan Bhimani," he was born in 1954, he was lawfully admitted to the United States for permanent residence, and wherefore he requested that he may be admitted a citizen of the United States of America, he swore that he knew the contents of his petition for naturalization subscribed by him, that the same were true to the best of his knowledge and belief, and that the petition was signed by him with his full, true name. Defendant signed the Form N-405 with his "Full Name, Without Abbreviation" as Ramzan Bhimani.

On August 31, 1989, based on Defendant's completed submissions in support of his naturalization petition and his naturalization examination, Defendant was administered the oath of allegiance and admitted to U.S. citizenship. The Clerk of the U.S. District Court for the District of New Jersey issued Defendant Certificate of Naturalization No. 14225113.

## STATUTORY BACKGROUND

The INA provides for the revocation of an individual's naturalized U.S. citizenship for either of two independent grounds: (1) if the naturalization was illegally procured; or (2) if the naturalization was procured by concealment of a material fact or by willful misrepresentation. 8 U.S.C. § 1451(a). "Illegal procurement" has occurred where an applicant naturalized despite failing to comply with all congressionally imposed prerequisites to the acquisition of citizenship. *Fedorenko v. United States*, 449 U.S. 490, 517 (1981). Naturalization was procured by concealment of a material fact or by willful misrepresentation where: (1) the naturalized citizen misrepresented or concealed some fact during the naturalization process; (2) the misrepresentation or concealment was willful; (3) the fact was material; and (4) the naturalized citizen procured citizenship as a result of the misrepresentation or concealment. *Kungys v. United States*, 485 U.S. 759, 767 (1988). Where the government establishes that the defendant's citizenship was procured illegally or by willful misrepresentation of material facts, "district courts lack equitable discretion to refrain from entering a judgment of denaturalization." *Fedorenko*, 449 U.S. at 517.

Based on the law and the agreed-upon facts, Defendant's naturalized U.S. citizenship was illegally procured.

## ANALYSIS

The parties agree that Defendant illegally procured his citizenship because he was not eligible for naturalization on the basis that he was not in possession of a substantively valid immigrant visa at the time of his admission into the United States for permanent residence and he was, therefore, never lawfully admitted for permanent residence, as alleged in Count II. ECF No. 1, Complaint ¶¶ 188-199. Congress has mandated that an individual may not naturalize

8

unless that person has been *lawfully* admitted to the United States for permanent residence. 8 U.S.C. § 1427(a)(1); *see also id.* § 1429.  The term "lawfully" as used in 8 U.S.C. § 1427(a)(1) requires status that is rightfully obtained in compliance with substantive legal requirements, rather than by mistake or fraud.  *See Estrada-Ramos v. Holder*, 611 F.3d 318, 321 (7th Cir. 2010) (noting that "the adjustment of status must be in compliance with substantive legal requirements, not mere procedural regularity," and that "the BIA has held that 'lawfully admitted for permanent residence' does not apply to aliens who 'obtained their permanent resident status by fraud, or had otherwise not been entitled to it'") (quoting *In re Koloamatangi*, 23 I. & N. Dec. 548, 550 (B.I.A. 2003)); 8 U.S.C. § 1101(a)(20).  Among the statutory requirements applicable at the time of Defendant's admission into the United States as a permanent resident were that he have a valid unexpired immigrant visa and that he be admissible to the United States.  *See* 8 U.S.C. §§ 1181(a) (1984), 1182(a) (1984).  An individual who at the time of application for admission was not in possession of a valid unexpired immigrant visa or other valid entry document required by the INA was ineligible to receive a visa and was excluded from admission into the United States.  *See* 8 U.S.C. § 1182(a)(20) (1984).

Under the law then in effect, a "spouse[] . . . of a citizen of the United States" was eligible to apply for an immigrant visa.  *See* 8 U.S.C. § 1151(b) (1984).  A person is properly classified as a "spouse" for purposes of the immigration statutes only if the marriage is valid under the law of the place where the marriage takes place.  *See Wedderburn v. I.N.S.*, 215 F.3d 795, 799 (7th Cir. 2000) ("INS determines the existence, validity, and dissolution of wedlock using the legal rules of the place where the marriage was performed (or dissolved).");  *see also Revelis v. Napolitano*, 844 F. Supp. 2d 915, 918 (N.D. Ill. 2012); *In re Lovo-Lara*, 23 I. & N. Dec. 746, 748 (B.I.A. 2005) ("In order to determine whether a marriage is valid for immigration

purposes, the relevant analysis involves determining first whether the marriage is valid under State law."); *Matter of P—*, 4 I. & N. Dec. 610, 614 (A.G. 1952) ("The status of 'wife' is necessarily dependent upon the validity of the marriage which created it . . . . [T]he generally accepted rule is that the validity of a marriage is governed by the law of the place of celebration.").

Defendant admits that he was still legally married to Carter-Hussain at the time he purported to marry Wilson-Bhimani in 1983, and that, therefore, his marriage to Wilson-Bhimani was void *ab initio*. *See* 1983 Ill. Laws 1163; Ill. Rev. Stat., ch. 40, ¶ 212(a)(1) (as amended in 750 Ill. Comp. Stat. Ann. 5/212(a)(1) (2014)); *see also Hunt v. Hunt*, 252 Ill. App. 490, 493 (Ill. App. Ct. 1929) ("It is well-settled law in this State that 'the marriage of a man and woman, where one of them has a husband or wife by a prior marriage, who is then living and undivorced, is void, and not merely voidable.'") (citing *Schmisseur v. Beatrie,* 147 Ill. 210, 214 (Ill. 1893) ("A second marriage is void where either of the parties to it has a husband or wife by a former marriage who has never been divorced and is still living.")); *Sparling v. Industrial Comm'n*, 48 Ill. 2d 332, 336 (Ill. 1971) (same). Defendant admits that because he was never legally married to Wilson-Bhimani, he was never eligible for an immigrant visa based on that purported marriage, and Wilson-Bhimani was never entitled to petition for an immigrant visa on Defendant's behalf as his wife. *See Matter of H—*, 9 I. & N. Dec 640, 640 (B.I.A. 1962) (denying an immediate relative visa petition because "the beneficiary's divorce certificate [did] not indicate that his first marriage was terminated prior to the petitioner's marriage to the beneficiary" and, thus, "the petitioner [had] not established that her marriage [was] valid").

Defendant concedes that his immigrant visa was therefore not issued in accordance with substantive law, and that because he was not in possession of a substantively valid immigrant

10

visa at the time of his admission into the United States for permanent residence, Defendant was not lawfully admitted for permanent residence. Defendant thus admits that he was ineligible for naturalization, that his naturalization was illegally procured, and that this Court should enter an order of denaturalization under 8 U.S.C. § 1451.[2]

## **CONCLUSION**

In light of the facts above which Defendant admits are true, and having fully discussed the case with his counsel, Defendant agrees with the United States that denaturalization is proper and, to avoid delay, uncertainty, inconvenience, and expense of further litigation, does not wish to further contest denaturalization. Accordingly, the United States and Defendant jointly move this Court for an order providing the relief requested in the attached proposed Consent Judgment Revoking Naturalization. The parties also jointly request the Court to set a hearing for approximately 21 days from the effective date of the Judgment at which Defendant, appearing in person with counsel, must demonstrate that he has complied with the Judgment, unless the United States provides notice that Defendant has fully complied and the Judgment is satisfied.

---

[2] The parties note that because all four counts in the United States' Complaint seek the same relief, if the Court grants judgment in favor of the United States on Court II, the remaining counts (Counts I, III, and IV) will be rendered moot.

Respectfully submitted,

_____  Dated: 7-16-20
RAMZAN BHIMANI,
a/k/a Ramzan Hussain

_____  Dated: 7/16/2020
Saadia Siddique
SIDDIQUE LAW GROUP, LLC
200 West Monroe Street
Suite 1625
Chicago, IL 60606
312-854-8060
Saadia@sidlawgroup.com

*Counsel for Defendant*

JOHN R. LAUSCH, Jr.
United States Attorney

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section

KATHLEEN A. CONNOLLY
Deputy Chief, National Security
& Affirmative Litigation Unit


*/s/ Kathryne M. Gray*_____                    Dated: July 13, 2020
KATHRYNE M. GRAY
Texas Bar No. 24087617
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 305-7386
Fax: (202) 305-7000
kathryne.m.gray@usdoj.gov

*Counsel for the United States of America*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 17, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will automatically serve the foregoing on all counsel of record *via* transmission of Notices of Electronic Filing generated by CM/ECF.

>*/s/ Kathryne M. Gray*
>KATHRYNE M. GRAY
>Trial Attorney
>U.S. Department of Justice
>Civil Division